UNITED STATES BANKRUPTCY COURT                    <u>FOR PUBLICATION</u>
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
*In re:*                                                :

                                                        :    Chapter 13
Francisco Procel,                                       :    Case No. 23-10697
                                                        :
                                        *Debtor*        :
------------------------------------------------------- x

### MEMORANDUM DECISION ALTERING A PRIOR JUDGMENT

<u>A P P E A R A N C E S</u> :

*Debtor, Pro Se*
Francisco Procel

*Nationstar Mortgage LLC as servicer for Wells Fargo Bank*
Frenkel, Lambert, Weiss, & Gordon, LLP
53 Gibson Street
Bay Shore, New York 11706
        By: Karen Sheehan

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is an order to show cause why the Court should not alter or

amend its prior judgment confirming the absence of the automatic stay on certain property.  For

the reasons set forth below, the Court alters its prior judgment and confirms that the stay was in

place at the time the Debtor's property was sold.

### <u>Jurisdiction</u>

This Court has jurisdiction over this contested matter under 28 U.S.C. § 157, 28 U.S.C. §

1334 and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska

dated January 31, 2012.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and one over

which this Court has authority to enter a final judgment.

## BACKGROUND

Francisco Procel ("Debtor") filed for chapter 13 relief on May 2, 2023—the same day that a foreclosure sale was scheduled to be held on property owned by the Debtor and located at 1114 Ashley Drive, Valley Stream N.Y. 11580. *See* Vol. Pet., ECF No. 1. This property is an investment property owned by Debtor and is not his primary residence.

On May 26, 2023, the servicer for the secured creditor on the property, Nationstar Mortgage LLC ("Nationstar"), filed a motion with this Court seeking a declaration that no stay was in place when the foreclosure sale occurred. Mot., ECF No. 28. The foreclosure sale was scheduled for May 2, 2023, at 2:00 pm and was concluded by 2:05 pm. *Id.*

Included in Nationstar's motion was a "timestamped" notice of bankruptcy filing, which showed that Debtor's petition was filed with the bankruptcy court on May 2, 2023, at 2:25 pm. *Id.* at Ex. A. The petition was not available for public viewing until the following day, on May 3, 2023, at 10:26 am, when the Clerk's Office created a Case Management/Electronic Case Files ("ECF") record of the filing.

On June 27, 2023, at 2:04 pm, one day before the hearing, Debtor filed opposition through the Court's official website's (https://coop.nysb.uscourts.gov [https://perma.cc/9ELS-JGE9]) PDF Upload for Self-Represented Individuals (the "Pro Se Upload Tool"). The opposition was not docketed until 5:06 pm by the Clerk's Office, which did not give the Court enough time to read prior to the hearing on June 28, 2023, at 8:59 am.

In his opposition, Debtor claims that he had been out of the country visiting his mother who is very ill. Opp'n 1, ECF No. 31. Upon returning, he learned this hearing was going to take place and filed his opposition. He argued that he filed bankruptcy online *prior* to the foreclosure sale taking place and that he called the foreclosure referee to advise him that the bankruptcy had

been filed.  *Id.*  Attached to the Debtor's opposition is a screen shot from his phone showing that

his petition was uploaded via the Court's Pro Se Upload Tool at "1:12."  *Id.* at 2.

The Southern District of New York Bankruptcy Court created the Pro Se Upload Tool in

April 2020 in direct response to the Covid-19 pandemic which restricted physical access to the

courthouses.  The tool allows pro se parties (who are generally not permitted to have e-filing

accounts on CM/ECF) to electronically upload documents through the Court's website.  The

Court's website states: "Pending further notice, self-represented individuals may file documents

with the court using the court's PDF Uploader tool. Please click here to **file**."  *See*

https://www.nysb.uscourts.gov/general-orders-and-guidance-created-covid-19

[https://perma.cc/NX9H-7QM4].  After clicking on the link provided by the Court, a debtor is

taken to a page where they can upload documents.  *Id.*  That page states, at the bottom,

> [t]his is a restricted site for Official Court Business only. . . . Documents received
> after 3:00 p.m. ET will be reviewed for filing the following business day. Filings
> received on nonbusiness days will be reviewed for filing the next business day.
> Business days are days other than weekends and holidays.  If there is a filing
> deadline, you must upload your document(s) 48 hours prior to the deadline.

*See* https://coop.nysb.uscourts.gov/prosefiles%20[https://perma.cc/WCC5-3FRK].

At the hearing held on June 28, 2023, the Court called Debtor's case, which was

scheduled for 8:59 a.m., at 9:07 a.m.  Debtor did not appear.  Creditor appeared and, based upon

the Notice of Bankruptcy filing timestamp indicating that the Debtor's bankruptcy case had been

filed at 2:25 pm, the Court granted Nationstar's motion indicating that the foreclosure sale was

not stayed by the filing.

Debtor called into the Zoom hearing late.  The Court recalled the matter at 10:07 a.m.  At

that time, the Creditor's attorney had already left the Zoom hearing, and the Debtor was adamant

that he had filed his case prior to the sale.  The Court verified the time of filing on ECF during

the hearing.  ECF indicated that the case was filed at 2:25 p.m.  The Court advised the Debtor

that his case was filed too late.

 After concluding the hearing, the Court requested that the matter be investigated further.

The Court reviewed the receipt the Debtor received upon filing on the Pro Se Upload Tool and

learned that the time of filing on the notice of bankruptcy filing did not match Debtor's "filed"

time from the receipt.  The Court also reviewed the email the Clerk's Office receives notifying it

of the filing, pictured below.  The receipt filed time was 1:12 pm, which matched Debtor's

screenshot exactly.

**From:** nysbinfo@nysb.uscourts.gov <nysbinfo@nysb.uscourts.gov>
**Date:** Tuesday, May 2, 2023 at 2:25 PM
**To:** ██████████@nysb.uscourts.gov>, NYSBMID_CaseFiling <CaseFiling@nysb.uscourts.gov>
**Subject:** Files submitted online

Receipt #:  1683047564
  Name:  Francisco Procel
  Email: Bx1765@gmail.com
  Phone: 7187080092
  Description:   Chapter 13 petition
  Filed: 05/02/2023 13:12:44
  Case number: None
  Files: 1683047564_0.pdf

 The Court asked the Clerk's Office for an explanation of which time is used to determine

when a petition is filed.  The Clerk's Office responded, via memo, that "the general practice has

been to use the Receipt Time (and not the Upload Time) as the timestamp for the filing."

 According to the Clerk's Office, there are multiple steps that occur between when a

Debtor uploads documents and when the Clerk's Office receives the documents.  In order to

ensure the documents do not contain viruses, malware, or other things that may cause an IT

security issue, the documents are not immediately uploaded to the Court's internal system (the

"DCN").  Instead, the document is saved on an external Linux system ("Linux"), where it is scanned for viruses and malware.

The scanning process always occurs at 20 minutes after the hour.  After being scanned, the documents are placed into an intermediary folder and await movement to the DCN.  The documents cannot be manually collected by the Clerk's Office.  Instead, an AO-controlled program called Moveit transfers documents from the intermediary folder to the DCN every hour during the first 15 minutes of each hour.  Once the documents are transferred to the DCN, an automated email is sent to the Clerk's Office.  That email contains the exact time that a document is uploaded into the DCN system.  The email is sent at 25 minutes after each hour. The Clerk's Office staff uses the time that the automated email is sent as the time that the document is "filed."  *See, e.g.*, *In re Procel*, Case No. 23-10697 (Manhattan chapter 13 petition timestamped as of 2:25 pm); *In re Feliz*, Case No. 23-10426 (Manhattan chapter 7 petition timestamped as of 5:25 pm); *In re Pabon*, Case No. 23-35374 (Poughkeepsie chapter 13 petition timestamped as of 4:25 pm); and *In re Hemans*, Case No. 23-10592 (Poughkeepsie chapter 13 petition timestamped as of 11:25 pm).  Currently, the "timestamp" on all documents filed under the Pro Se Upload tool is always 25 minutes after the hour and is always between 1 and 2 hours after the user clicks "upload" on the webpage and the document was uploaded to the Linux system.

Having been made aware of this time-lag between the time a debtor uploads a document and the time the automated email is sent to the Clerk's Office, the Court must now determine which time reflects more accurately the "filed" time consistent with applicable case law.  The Court issued an Order to Show Cause to the parties and reheard argument on this motion on July 20, 2023.

### DISCUSSION

Federal Rule of Civil Procedure 59(e), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9023, provides the Court an avenue to alter or amend a judgment when it is presented with matters "which the court overlooked that might have materially influenced its earlier decision."  Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023; *In re Sears Holdings Corp.*, No. 18-23538, 2022 Bankr. LEXIS 3110, at *10 (Bankr. S.D.N.Y. Nov. 3, 2022) (quoting *In Design v. Lauren Knitwear Corp.*, 1992 U.S. Dist. LEXIS 2203, 1992 WL 42911, at *1 (S.D.N.Y. Fed. 24, 1992)).  Where "there is a need to correct a clear error or prevent manifest injustice," the Court may alter or amend a judgment under Rule 59(e) and may do so sua sponte.  *Burnam v. Amoco Container Co.*, 738 F.2d 1230, 1232 (11th Cir. 1984); *Grabis v. Navient Sols., LLC* (*In re Grabis*), Nos. 13-10669-JLG, 15-01420-JLG, 2018 Bankr. LEXIS 3664, at *6 (Bankr. S.D.N.Y. Nov. 20, 2018) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Under the Bankruptcy Code, a voluntary case is commenced by "filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter," 11 U.S.C. § 301(a), and the petition "shall be filed with the clerk."  Fed. R. Bankr. P. 1002(a).  Neither the Code nor Rules indicate how to determine the precise timing of a bankruptcy filing.  *In re Brown*, 311 B.R. 721, 725 (Bankr. W.D. Pa. 2004) (Code § 301 is "singularly unhelpful" in determining the precise timing of a petition).  Most courts have ruled that "a bankruptcy petition is filed for purposes of Code § 301 when it is first placed in the actual or constructive possession of the clerk of the bankruptcy court."  *In re Sands*, 328 B.R. 614, 618 (Bankr. N.D.N.Y. 2005) (citing supporting authorities); *accord Cintron v. Union Pac. R.R.*, Co., 813 F.2d 917, 920 (9th Cir. 1987) ("papers and pleadings including the original complaint are

considered filed when they are placed in the possession of the clerk of court"); *but see In re McMeans*, 209 B.R. 253, 256 (Bankr. N.D. Ala. 1997) (ruling that the petition was filed when it was timestamped, not when the petition was received by the Clerk's Office fax machine).

When there is a "dispute as to precisely when a bankruptcy petition was placed in the possession of the clerk, the time and date stamped on the petition gives rise to a presumption that the petition was filed at the time and on the date so indicated." *Brown*, 311 B.R. at 725. As explained by this Court, the timestamp presumption may be rebutted by the presentation of credible evidence:

> This Court holds that the date and time-stamp on a bankruptcy petition creates a rebuttable presumption as to when it was filed. To rebut that presumption, a debtor must submit evidence that demonstrates the petition was filed at a different time, i.e., earlier. The evidence must show that when the petition was presented to the office of the clerk, it was in acceptable filing form, and was received by a representative of that office.

*In re Schleier*, 290 B.R. 45, 50 (Bankr. S.D.N.Y. 2003) (Morris, J.); *accord In re Manzueta*, 620 B.R. 195, 198 (Bankr. D. Mass. 2020) ("the 'time-stamp presumption' is just that – a presumption that may be rebutted by credible evidence") (citation omitted).

Circumstances in which courts have found that the timestamp presumption was rebutted include where the debtor (and an individual who drove the debtor to the courthouse) testified that she handed the petition over to the deputy clerk at the intake counter before the stamped time. *Schleier*, 290 B.R. at 49–50, 55. The timestamp presumption was also rebutted when the internal records of the Clerk's Office showed that the petition was received via email and facsimile before the stamped time. *Manzueta*, 620 B.R. at 197–98. The presumption has been rebutted when debtor's counsel handed the bankruptcy petition to a deputy clerk but was subsequently instructed to scan the petition into the court's electronic filing system and in another instance when the debtor handed the petition to the deputy clerk but was told to return with the correct

filing fee.  *Brown*, 311 B.R. at 728, 730; *Nat'l Westminster Bank, NJ v. Markings Assocs*., 1992 WL 281158, at *2 (D.N.J. Sept. 21, 1992).

The issue presented here is whether the Debtor's petition should be deemed filed for purposes of 11 U.S.C. § 301 at the time the Debtor submitted the petition (1:12 pm) or the time the Clerk's Office received the email notifying them of the petition (2:25 pm).  Under the timestamp presumption described *supra*, there is a rebuttable presumption that the Debtor's petition was filed at 2:25 pm, i.e., the stamped time corresponding to the time at which the Clerk's Office received email notification of the petition.

The circumstances where courts have found the time-stamp presumption rebutted illustrates a bankruptcy court's reverence of the automatic stay.  The automatic stay is one of the most important protections provided by, and a foundational principle of, the Bankruptcy Code. *See* H.R. Rep. No. 95–595, at 10 (stating that the automatic stay provision is "one of the fundamental debtor protections provided by the bankruptcy laws," designed to relieve "the financial pressures that drove [debtors] into bankruptcy.")  The stay is immediately triggered by the filing of the petition and acts as an injunction halting all proceedings against the debtor and its property, nationwide.  The stay is of broad scope and is a tool frequently used in individual bankruptcies to stay foreclosure proceedings and allow the Debtor an opportunity to reorganize.

Due to the immediate effect of the stay, the Courts in *Brown, Manzueta,* and *Westminster Bank, NJ* all carefully considered at what time the petition would be considered filed.  Those Courts focused on when the Debtor gave the petition to the Clerk's Office and relinquished control over how the petition would be processed by the clerk.  *Brown*, 311 B.R. at 728, 730 (finding that the filing took place when the Debtor first handed the petition to the clerk, not when Debtor subsequently scanned it into the electronic filing system); *Manzueta*, 620 B.R. at 197–98

(finding that the filing took place when the internal records of the Clerk's Office showed that the petition was received via email and facsimile, not at the time it was stamped by the Clerk's Office); *Nat'l Westminster Bank, NJ v. Markings Assocs.*, 1992 WL 281158, at *2 (D.N.J. Sept. 21, 1992) (finding that the filing took place when the Debtor first handed the petition to the clerk, not when Debtor subsequently returned with the correct filing fee). When a Debtor files their petition with the Clerk's Office in person, the petition is stamped and deemed filed *before* it is subjected to a security check. "Bare-bones[1]" petitions are frequently filed in order to stop foreclosure sales. All these situations highlight the importance of the stay to debtors. Mere minutes can be the difference between saving one's home through a chapter 13 reorganization or losing that home to foreclosure. Without a strong and robust automatic stay, the Bankruptcy Code loses significant strength.

When Debtor's petition was uploaded at 1:12 PM[2], it was in the constructive possession of the Court. *In re Sands*, 328 B.R. 614, 618 (Bankr. N.D.N.Y. 2005). It was uploaded through the Court's official website and confirmation of receipt was sent to the Debtor using the Court's masthead. The only thing that prevented the petition from being docketed to the ECF system was the security scan. In short, there was no further step that the Debtor could—or needed to—take to file the case.

The Clerk's Office has long been an important part of the judicial system, having been established by the Judiciary Act of 1789. The federal court clerk is charged with maintaining the

---

[1] A "bare-bones" petition is a colloquial term for a petition filed with the minimum required information, usually in order to trigger the automatic stay and stop a foreclosure sale. In those instances, Debtors have 14 days to return with their completed schedules and proof of related requirements pursuant to Fed. R. Bankr. P. 1007(c).

[2] Debtor uploaded 3 petitions. The first was uploaded at 1:12 p.m. followed by a petition uploaded at 1:55 p.m. and 1:59 p.m. Those petitions were "timestamped" by the Clerk's Office at 2:25, 3:25, and 3:25, respectively.

records of the Court and its dependability lends integrity to the Court.  The clerk plays an

especially important function in serving unrepresented parties—who are forbidden from directly

accessing the public electronic filing system.  The clerk is charged with screening and recording

documents and "shall not refuse to accept for filing any petition or other paper presented for the

purpose of filing solely because it is not presented in proper form as required by these rules or

any local rules or practices."  Fed. R. Bankr. P. 5005(a)(1).

An authorized electronic filing is no different from delivering a document in person to the

Court.  As is indicated by Bankruptcy Rule 5005, the Clerk's Office must accept the filing even

though it may not be in the proper form.  While the Court must run a security scan before putting

the papers on the internal system, this does not control the time of when the debtor filed for

purposes of Section 301.  Fed. R. Bankr. P. 5005(a)(1) (requiring acceptance of all petitions

regardless of form).  The accepting of electronically filed petitions over the internet is no

different than the accepting of paper petitions in person.  While the security scan is necessary

and appropriate, it should not delay when a petition is deemed filed.

The timing of the security scan is wholly in the control of the Court and not in the control

of the Debtor.  The upload time is the actual time the Debtor submitted the documents to the

Court.  By contrast, the email notification time is a Court-created time that only occurs at the

25th minute after each hour.  The upload time and the email notification time are easy to

determine as they both appear in the automated email sent to the Clerk's Office.  Of the two, the

upload time is more akin to the "timestamp" time used by the Court for after-hours filings.

Many courts maintain a drop box outside of the courthouse so that a party can file

documents during times when the courts are closed.  The party need only stamp the document

with the time and drop it in the box.  That "timestamp" is considered the filing time even if the

Clerk's Office did not have possession of the documents until the following morning when the Courthouse opened. This Court routinely accepts papers filed in the drop box and uses the "drop" time as the "filed" time even though the Court is not in actual possession of the documents until the Courthouse is open. *See* Bankr. S.D.N.Y. LBR 5001-1 ("When the Clerk's Office is closed, papers not filed electronically may be filed with the Court by depositing them in the night depository maintained by the District Clerk and are deemed filed as of the date and time stamped thereon.").

In this case, the timing of the documents matter greatly. Debtor's property was sold at a foreclosure sale at 2:05 p.m. even though he had uploaded his documents to the Court at 1:12 p.m.—almost an hour earlier. The email notification was not made until 2:25 p.m. Despite this, Debtor and the Court both have irrefutable evidence that Debtor uploaded his petition at 1:12 p.m.

The evidence showing that the Debtor submitted the petition at 1:12 p.m. rather than 2:25 p.m. rebuts the timestamp presumption.

## <u>Conclusion</u>

The Court will use the "upload" time as the filing time. The automatic stay was in place at the time of the foreclosure sale. The Court will enter an order altering its prior judgment.

/s/ Cecelia G. Morris

_____

Dated: July 25, 2023
Poughkeepsie, New York

Hon. Cecelia G. Morris
U.S. Bankruptcy Judge